ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| MARIBEL RIOLLANO RAMOS<br><br>Recurrida<br><br>v.<br><br>ROYAL ISABELA, INC.; COSTA ISABELA MASTER ASSOCIATION, INC.; COSTA ISABELA PARTNERS, INC.; MIGUEL MACHADO; FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; COMPAÑÍAS DESCONOCIDAS A, B, C; COMPAÑÍAS DE SEGURO 1,2,3<br><br>Peticionarios | KLCE202400308 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br><br>Caso Núm.: AG2021CV01538<br><br><br><br>Sobre: Difamación, Libelo, Calumnia y Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de abril de 2024.

Comparece Royal Isabela, Inc., Costa Isabela Partners, Inc., Miguel Machado (en adelante, señor Machado), la Sociedad Legal de Gananciales compuesta por sí y por su esposa Erika Román Soto y Costa Isabela Master Association (en conjunto, los peticionarios), mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Resolución* emitida y notificada el 10 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, TPI). Mediante el dictamen recurrido, el foro primario declaró No Ha Lugar una moción de sentencia sumaria presentada por los peticionarios y concluyó que en el presente caso existían controversias de hechos que impedían la disposición del pleito por la vía sumaria.

Número Identificador

RES2024_____

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

El 16 de diciembre de 2021, Maribel Riollano Ramos (en adelante, señora Ramos o recurrida) instó una *Demanda* sobre difamación, libelo, calumnia y daños y perjuicio contra los peticionarios.[1] Mediante esta, alegó que durante el mes de marzo de 2021, recibió una solicitud de Maricarmen Gianati, residente del complejo Royal Isabela, para que esta investigara una situación relacionada con unos objetos voladores denominados como parapentes, los cuales estaban sobrevolando las inmediaciones de su propiedad. Sostuvo que, por motivo de esto, la señora Riollano, quien era sargento de la Policía Municipal de Isabela, se personó en varias ocasiones a las facilidades de Royal Isabela con el propósito de dar seguimiento a la situación antes mencionada, para dar vigilancia preventiva y, además, para dar seguimiento a una información confidencial referente a una alegada actividad ilegal que estaba ocurriendo en la costa que colinda con el complejo Royal Isabela.

De igual manera, la recurrida argumentó en su *Demanda* que el señor Machado, quien era el Director de Seguridad de Royal Isabela y legislador municipal del Municipio de Isabela (en adelante, Municipio) presentó una querella en su contra. Indicó que dicha querella se hizo ante el Municipio y en la misma se planteó que presuntamente la señora Riollano acudió en múltiples ocasiones a Royal Isabela y permanecía allí sin que se hubiese reportado una querella o servicios de seguridad. Indicó que, a base de esta querella, el Municipio comenzó una investigación en su contra. Adujo que posterior a esto, el 28 de agosto 2021, la señora Riollano fue

---

[1] Apéndice del recurso, a las págs. 1-6.

desarmada y relevada de sus funciones como agente de policía y de igual manera, fue transferida a un puesto clerical. Arguyó que, a base de la investigación que se realizó producto de la querella instada por el señor Machado, el 2 de diciembre de 2021, el Municipio le entregó una carta en la cual se le formuló cargos y le notificó la intención de imponerle medidas disciplinarias que pudiese acarrear su despido.

La señora Riollano sostuvo que la referida carta repitió la presunta falsedad de que esta acudió a Royal Isabela para fines personales en horas laborables y que dichas alegaciones falsas fueron emitidas por el señor Machado quien sabía sobre la falsedad de estas. Ante ello, solicitó una indemnización por quinientos mil dólares ($500,000.00) por daños y perjuicios, por las expresiones presuntamente falsas y difamatorias en contra de su persona.

En respuesta, los peticionarios presentaron una *Moción en Solicitud de Desestimación.*[2] En síntesis, argumentaron que en la *Demanda* incoada por la recurrida se debió haber incluido alegaciones específicas sobre hechos constitutivos de malicia real y esto no estuvo presente en su reclamación. De igual forma, plantearon que, ante este escenario, dando como ciertas las alegaciones de la señora Riollano, estas no adujeron a que la reclamación en cuestión conllevara la justificación de la concesión de un remedio. Tras varios trámites procesales los cuales son innecesarios pormenorizar, el 8 de julio de 2022, el TPI emitió una *Resolución* en la cual declaró No Ha Lugar la moción de desestimación de los peticionarios.[3]

Posteriormente, el 29 de septiembre de 2023, los peticionarios instaron una *Moción en Solicitud de Sentencia Sumaria.*[4] En esta,

---

[2] *Id.*, a las págs. 6-20.
[3] *Id.*, a las págs. 43-49.
[4] *Id.*, a las págs. 50-161.

plantearon que el asunto litigioso en controversia era si la señora Riollano contaba con la prueba clara, robusta y convincente necesaria para probar todos los elementos de su causa de acción por difamación. Así pues, alegaron que, tras el descubrimiento de prueba, la recurrida no produjo evidencia para sustentar cuáles fueron las declaraciones difamatorias que emitió el señor Machado y el alegado conocimiento que este último tenía sobre su falsedad. Asimismo, argumentaron que en este caso también aplicaba el privilegio restringido. Por tales motivos, le solicitaron al TPI que dictara sentencia sumaria en este pleito y, en consecuencia, desestimara con perjuicio la reclamación de la señora Riollano.

El 26 de noviembre de 2023, la recurrida presentó su *Moción en Oposición a Moción de Sentencia Sumaria*.[5] En esencia, sostuvo que, en el presente caso, existían suficientes controversias que impedían la disposición del mismo de manera sumaria. Así las cosas, una vez evaluada la postura de ambas partes, el 10 de enero de 2024, el TPI emitió y notificó su *Resolución* en la cual declaró No Ha Lugar la solicitud de sentencia sumaria de los peticionarios.[6] En su dictamen, el foro primario formuló los siguientes hechos que no estaban en controversia:

1. Para la fecha de los hechos alegados en la demanda, Miguel Machado era el Director de Seguridad de Royal Isabela.
2. Como parte de sus funciones como director de seguridad de Royal Isabela, el señor Machado daba seguimiento a querellas sobre incidentes que ocurrían dentro de Royal Isabela.
3. Como parte de estas funciones, el señor Machado dio seguimiento a quejas que hubo sobre una compañía turística que alquilaba parapentes y en ocasiones sobrevolaban las facilidades de Royal Isabela.
4. El 4 de febrero de 2022, el alcalde del Municipio de Isabela, Miguel E. Méndez Pérez, le envió una carta a la demandante en la cual le notificó el resultado de una investigación que llevó a cabo el Municipio de Isabela.

---

[5] *Id.*, a las págs. 162-242.
[6] *Id.*, a las págs. 243-252.

5. Según se desprende de dicha carta, el 2 de diciembre de 2021, el Alcalde le notificó a la demandante sobre la formulación de cargos en su contra y la intención de suspenderla de empleo y sueldo o expulsarla de la policía municipal.

6. La carta indica que "el día 7 de junio de 2021, el Comisionado recibió otra querella del Sr. Miguel Machado, quien ocupa la posición de Director de Seguridad del Hotel Royal en Isabela y a su vez ocupa el cargo de Legislador Municipal, informando que una patrulla municipal acudía en múltiples ocasiones y permanecía allí varias horas sin que se hubiese reportado una querella o se solicitara los servicios de seguridad".

7. De conformidad con lo expresado por el Alcalde en la carta del 4 de febrero de 2022, el Municipio de Isabela llevó a cabo una investigación administrativa, por conducto del Sr. Anthony Nieves Hernández, quien es Oficial Investigador del Municipio, y de la investigación administrativa se concluyó que "quien acudía allí [Royal Isabela] con la patrulla municipal era [la Sgto. Riollano] y lo hacía para asuntos no oficiales, en horas laborables para visitar la residencia de una amiga suya, señora Maricarmen Gianati y su esposo señor Richard Brown, que ubica en el referido Hotel. Además, le notifiqué y le desglosé, las once fechas y horas, durante el periodo que cubre del 26 de marzo al 23 de mayo de 2021, en que usted abandonó el servicio para asuntos personales".

8. El alcalde le notificó a la Sgto. Riollano la decisión de expulsarla del Cuerpo de la Policía Municipal por incurrir en las faltas graves número 1 (demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades), número 9 (usar lenguaje ofensivo, impropio y denigrante contra el... miembros de la Policía, funcionarios y empleados de la Policía Municipal), número 19 (poner en duda la integridad, honradez, o competencia de cualquier miembro de la Fuerza, funcionarios o empleado civil, funcionario público o personas particulares, haciendo manifestaciones públicas impropias con el único fin de denigrarle) y número 26 (abandonar el servicio sin la debida autorización).[7]

El TPI concluyó que en el presente caso existían controversias de hechos materiales y persistían dudas sobre si la recurrida tenía

---

[7] *Id.*, a las págs. 244-245.

evidencia suficiente para establecer el elemento de malicia real. Expresó que no era aconsejable dictar sentencia sumaria en aquellos casos cuyas controversias versaban sobre asuntos de credibilidad o envolvían aspectos subjetivos. Cónsono con esto, el TPI determinó que existía controversia en los siguientes asuntos:

1. Si la demandante visitaba constantemente las facilidades de Royal Isabela sin que se hubiese requerido los servicios policiacos para investigar alguna situación.
2. Si la demandante, mientras se encontraba en horas laborables y utilizando una patrulla de la policía municipal, permanecía periodos largos de tiempo en el complejo de Royal Isabela para visitar a la señora Gianati.
3. Si la demandante acudía a Royal Isabela para fines legítimos de su trabajo.
4. Si el señor Machado se limitó a presentar la querella ante las autoridades pertinentes.
5. Si el señor Machado presentó la querella con conocimiento de que la parte demandante acudía al lugar para fines legítimos de su trabajo.[8]

Insatisfecho con este dictamen, el 25 de enero de 2024, los peticionarios presentaron una *Moción en Solicitud de Reconsideración de Resolución del 10 de Enero de 2024 y Solicitud de Determinaciones Adicionales*.[9] En ella, reiteraron que se debía dictar sentencia sumaria ya que, a su juicio, se demostró que no era necesaria la celebración de una vista evidenciaria, que la recurrida no contaba con prueba suficiente para probar un hecho esencial de su reclamación y que por ello, como cuestión de derecho, procedía la desestimación del pleito. El 12 de febrero de 2024, el TPI declaró No ha Lugar la reconsideración. [10]

Inconforme aun, el 13 de marzo de 2024, los peticionarios acudieron ante nos, mediante un recurso de *Certiorari* y formularon los siguientes señalamientos de error:

Primer Error: Erró el Tribunal de Primera Instancia al no desestimar la demanda de difamación a pesar de que

---

[8] *Id.*, a la pág. 252.
[9] *Id.*, a las págs. 253-265.
[10] *Id.*, a la pág. 266.

los hechos ya establecidos como incontrovertidos se desprende la veracidad de los hechos denunciados.

Segundo Error: Er[r]ó el Tribunal de Primera Instancia al no desestimar la demanda de difamación a pesar de que a los hechos del presente caso claramente le es aplicable la doctrina del privilegio restringido.

Tercer Error: Erró el Tribunal de Primera Instancia al no desestimar la demanda de difamación a pesar de que la parte demandante no posee evidencia alguna para establecer la alegación de malicia real por lo que en el juicio habrá ausencia total de evidencia para establecer un elemento esencial de su causa de acción.

Atendido el recurso, le concedimos a la parte recurrida hasta el 1 de abril de 2024 para expresarse. Habiendo decursado el término para que la parte recurrida compareciera en autos sin haberlo hecho, procederemos a disponer del recurso sin el beneficio de su comparecencia.

II

## A. Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[11] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> […]
> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de

---

[11] 32 LPRA Ap. V, R. 52.1.

Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[12]
[…]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[…]
(b) *Recurso de "certiorari"* [...]
Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*[13]
[…]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[14] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[15] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[16] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[17] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[18] La Regla 40 del Reglamento

---

[12] *Id.*
[13] 32 LPRA Ap. V, R. 52.2 (b).
[14] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[15] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[16] *Id.*
[17] *Banco Popular de Puerto Rico v. Gómez Alayon,* 2023 TSPR 145; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[18] *Id.*

del Tribunal de Apelaciones[19], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[20] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[21]

### III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso,

---

[19] 4 LPRA Ap. XXII-B, R.40.
[20] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[21] *Banco Popular de Puerto Rico v. Gómez Alayon, supra; Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

los peticionarios plantean que el TPI incidió al no dictar sentencia sumaria a su favor. Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[22] Puntualizamos que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección.

Tras haber realizado un examen *de novo* de la solicitud de sentencia sumaria instada por los peticionarios, así como la oposición presentada por la recurrida, conforme a la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido. Puntualizamos que nuestro ordenamiento jurídico nos confiere la discreción para intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Juzgamos que en el recurso ante nos, no nos encontramos ante ninguna de estas circunstancias que hagan necesario eludir la norma de abstención judicial.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas, de modo que estas podrían ser presentadas nuevamente

---

[22] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[23] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[24] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI. [25] Por tanto, resolvemos *denegar* la expedición del auto de *Certiorari.*

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 12 (2016).
[24] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[25] *Id.,* a la pág. 756.